MONROE, C. J.
This case is brought before the court by defendants’ appeal from a judgment annulling á special tax of eight mills, voted for 18 years, at a special election held on May 20, 1919, in school district No. 25 of Jackson parish. The plaintiffs are 32 citizens and taxpayers of the district, and the defendants are the school board, the assessor, and the tax collector. The grounds relied on in support of plaintiff’s demands, and of the judgment sustaining the same, may be stated, in substance, as follows:
That on April 7, 1919, the parish school board passed an ordinance directing:
“That a special election be, and is hereby, ordered to be held in school district No. 25, * * * on the 20th day of May, 1919, for the purpose of submitting to the qualified .electors of said school district, entitled to vote thereat, the question of a levy of a special tax, of eight mills, * * * for a period of 18 years, the proceeds of said tax to be used in issuing certificates of indebtedness and building and equipping the public school building in said district.”
That on May 29th, the election having been held, the board promulgated the returns declaring that it had been carried in favor of the tax; that the purpose of the board and of those voting for the tax was to impose a special tax of eight mills, for IS years, in excess of the tax allowed by law, and that the election and tax, as voted, were null, for the reasons: (1) That the board is without authority to vote any special tax in excess of five mills; (2) that under no circumstances is it authorized to vote a special tax for the purposes declared in the ordinance ordering the election in question; (3) that, if it should be held that it was authorized to vote part of the tax, i. e.,.the part to be used “in issuing certificates of indebtedness,” or that'to be used “in building and equipping a public schoolhouse,” it would have been necessary to so order the election that the electors could have voted for or against the one or the other of those propositions separately, and that the election was null as to any proposition not stated' in the ordinance; (4) that school district No. 25 does not need a schoolhouse, and the board has no intention of building one, since a new building for that purpose was erected in 1917, and occupied for school purposes during the early part of 1918 and the entire school year 1918-19; (5) that petitioners are informed, believe, and aver that the board ordered the election in question in order to have a tax levied for an apparently legal purpose but the proceeds of which are intended to be used for an illegal purpose, to wit, to finish paying the debt incurred in building the sehoolhouse, in 1917, and in operating a school; (6) that a tax cannot legally be levied for either of those purposes, for the reasons, as to that first mentioned, that no provision was made for the payment of such debt at the time it was created, and, as to the other, that it is “prohibited by law, the parish of Jackson having already voted a five-mill school maintenance tax throughout the entire parish”; (7) that, at the time the sehoolhouse was built, a bond issue of $7,000 was voted and a special building tax of ten mills, and that about $4,600 were collected in the way of insurance on the pre-existing sehoolhouse, which had been burned; that it was the intention of the school board that those amounts should be used for the building of the new sehoolhouse and that the debt creat *267 ed in erecting such building should be so paid, if at all.
Defendants filed an exception of “no cause of action,” which was referred to the merits; and answered admitting- the ordering, holding, and promulgation of the election, as alleged, save that they aver that it was promulgated on May 21, instead of May 29. They further allege that plaintiffs paid the special tax in question, for 1919, and thereby waived the right to contest the election, or the further levy of the tax; and the answer in other respects amounts to a general denial.
The evidence, in the main, sustains the allegations of the petition. It shows that in January or February, 1917, a certain schoolhouse was burned, and that the school board collected insurance money to the amount of $5,455.80; that on May 1, following, it passed an ordinance declaring that the school district included a certain territory, constituting school district No. 25, and ordering a special election to be held for taking the sense of the qualified electors therein upon the question of issuing bonds to the amount of $7,000 payable in 20 years, and the levying a tax for their payment, the proceeds to be used for the building and equipping of a new schoolhouse. The board appears to have been somewhat in debt at that time, though how deeply we are unable to say. Within the week following the adoption of the ordinance, however (and some five weeks before the election thereby ordered), it entered into a contract for the erection of the schoolhouse, for the sum of $11,633.15; in addition to which, the board agreed to furnish and deliver the brick of which the building was to be constructed, pay the fee of the architect, etc.; and, in the course of the work, there were certain “extras” that were found necessary, so that the cost exceeded $16,000; and, although the building was occupied and used for school purposes, from, and after January, 1918, it was said on the trial (in October, 1920) that it had not yet been entirely completed. In addition to the cost of the building, it was found necessary to supply new furniture and “equipment,” at a cost of, say, $5,400, thus making a total for construction and equipment of, approximately, $22,000; to meet which, the proceeds of the bonds ($6,600), plus the proceeds of the insurance on the old schoolhouse (say, $5,455.50), making a total of $12,055.80, fell short, about $10,000. It seems to be admitted, however, that in April, 1919, when the special election was ordered for the purposes of the special tax here in controversy, the shortage and indebtedness of the board amounted to about $22,000; and that it was for the payment of that indebtedness, or the greater part of it, that the eight-mill tax was levied. Mr. R. F. Dickerson, president of the school board, says (at one time, in testifying) that the purpose of the eight-mill ievy was to finish paying for the building already built, and, also, to build a one-room school for the Spring Hill community; but a witness from that community testifies that the board refused to do anything for them until after this suit was instituted, when the superintendent said that, if they could compromise the suit, they would build a two-room schoolhouse at Spring Hill. And at another time, in testifying, Mr. Dickerson, being asked, “Isn’t it a fact that this tax was voted to finish paying (for) this schoolhouse?” replied, “It was.” And again his attention being called to a certain statement of account kept by the school board, on which the figures $22,204.44 appear, as representing the board’s overdraft, Mr. Dickerson was asked whether that amount represented the debt after the completion of the.schoolhouse, and whether that was the debt that the board intended to liquidate with the proceeds of the eight-mill tax, and he re *269 plied that part of the amount stated represented the debt, and that it was the intention to use the proceeds of the tax for its payment.
Mr. Tolar, the chairman of the board’s building committee, testifies that it was his understanding that the tax was to pay for the building that they have; that it was not altogether completed, and that it was not for a new schoolhouse; that Superintendent Harris suggested that the method here in question be tried, and that they are now “trying it out.”
We observe that the ballots prepared for the election in question read somewhat differently from the ordinance calling the election, the purpose being stated thereon as follows:
“Por the purpose of issuing certificates of indebtedness to build and equip a public school, building in said school district.”
Whereas, the ordinance reads:
“The proceeds of said tax to be used in issuing’ certificates of indebtedness- and building and equipping the public school building in said district.”
The conclusion that we reach is that the purpose of the levy was to obtain money wherewith to retire certificates of indebtedness, issued, or to be issued, in part, for the payment of the debt incurred in the building and equipping of the schoolhouse, already built and equipped, and, in part, for some purpose, or purposes, not submitted to the taxpayers and not disclosed by the evidence, since the balance due on the school building account could hardly have exceeded $10,000. and the amount called for by the tax levy (eight mills on a present assessment of $200,000 which is ’ likely to increase, year by year during 18 years) is $28,000.
We -find no testimony in the record on the subject of the payment, or nonpayment, of the tax in question by the plaintiffs or either of them.
Opinion.
Article 232 of the Constitution, amended pursuant to Act 224 of 1914, declares that—
“Except as otherwise provided in this Constitution, no parish, municipal or public board tax for all purposes whatsoever, shall exceed in any one year ten mills of the dollar of assessed valuation; provided, that for giving additional support to public schools and for the purpose of erecting and constructing * * public sehoolhouses, * * * the title to which shall be in the public * * S: any * * * school district may levy a special tax in excess of said limitation whenever the rate of such increase and the number of years it is to be levied and the purpose for which the tax is intended, shall have been submitted to a vote of the property tax -payers of such * * * school district, entitled to vote under the laws of the state, and a majority of the same in number, and in amount * * * have voted therefor.”
By Act 81 of 1918, p. 117, school boards are authorized to create school districts and to order the holding of the elections contemplated by the foregoing provision. And Act 120 of ■ 1916, confers, other powers on these boards and regulates their exercise, in part, as follows:
“See. 9. * * * Parish school boards shall use the general or current school funds, such as the state current school funds, poll taxes, fines, police jury appropriations, land rents, proceeds from sale of timber, in short, all school funds except those voted or appropriated for special purposes, to provide equal sessions for all schools. * * * Buildings, additions to buildings, repairs, supplies, sites, and equipment may be provided out of the general funds. Communities desiring better facilities and longer sessions than can be provided by a distribution of the general funds giving equal sessions to all schools shall secure same by voting special taxes or obtaining additional funds- from other sources than the current or general school funds.”
“Sec. 55. * * * The parish school board shall make annually an estimate of the amount of revenues for the year, * * * and no war *271 rant beyond the' amount estimated shall be drawn for any year. These warrants shall be numbered and shall. specify on their face to whom and for what they are given; the treasurer shall pay these warrants only- to the extent of the amount to the credit on his books and in the order in which they.are presented, and said warrants shall be filed in his office as vouchers. * *
“Sec. 50. * * * That it shall be the duty of the various parish school boards, * * * during the month of July of each year, to adopt a budget of revenues to accrue to said school board during the ensuing year; said budget not to include probable revenues arising from doubtful or contingent sources.
“(.a) Within thirty days after the adoption of the budget of revenues, the school board shall adopt a budget of expenditures, not to exceed the budget of revenues; said budget of expenditures shall detail as nearly as possible the said expenditures and no item of indebtedness not included in said detailed. estimate shall be paid by the treasurer * * * under pain, he and his bondsmen, of being personally liable for any item so paid and not included in said budget of expenditures; if during the course of the year revenues from any unexpected or contingent source should have ■ been realized, an amended budget of revenues may be adopted and an amended budget appropriating said revenues, in the same proportion as above may also be adopted. * * * The adoption of said budget of revenues shall be considered as the appropriation * * * without other formal appropriation.”
• .“Sec. 62. * * * That the parish .school board shall have authority to borrow money to meet current expenses, provided the funds realized from such loans are used to pay items included in the budget of expenditures previ.ously adopted by the board and that no revenues except these of the current session are pledged to secure any such loan.”
It will be seen that the provisions of the statute, thus applied to school boards, amount to about the same thing as those applied, by other enactments, to police juries and municipal corporations, proper, to wit:
“Sec. 2118 (Revised Statutes). The police juries * * * and the constituted authorities of incorporated towns and cities * * * . shall not hereafter have power to contract, debt or pecuniary liability, without fully providing in the ordinance creating the debt) the means of paying the principal and interest of the debt so contracted.”
“Section 1. (Act 32 of 1902). * * « That no police jury •* * * nor any municipal corporation * * * shall in any one year, make any appropriation of, approve any claim against or make anj' expenditure from the annual revenue for that year, which appropriation, approved claim of expenditure shall, separately or together with other appropriations, approved claims or expenditures, be in excess of the estimated revenue of that year.”
And, considering the constitutional and statutory requirements thus quoted, as applied to the facts of this case, it seems, that they have been more honored by the defendant boards in the breach than in the observance. The framers of the Constitution thought proper, in the interest of public education, to vest school districts with the power to levy special taxes, in excess of the limitation- otherwise imposed, for the building of the public schoolhouses; but they did so upon the condition that the taxpayer shall be first informed, of the rate and duration of the tax and the purpose for which it is 'intended, and shall be given an opportunity to approve or disapprove the levy upon tbe basis of that information and of definite propositions so submitted, so that, in approving one, they will not be entrapped into approving another. That condition the defendant board did not comply with. The purpose of the levy here in question, as declared in the ordinance, was to impose and collect a tax, the proceeds of which were “to be used in issuing certificates of indebtedness and building and equipping the public school building in said-district.” The proceeds referred to were, doubtless, intended to be used in retiring,, rather than isssuing, the certificates; but, passing that, the statement contains no-information as to the intended use of the certificates, since' the *273 conjunction “and” indicates another and different purpose.
It may be said that the language is susceptible of the construction expressed by the ballots, to wit, “for the purpose of issuing certificates of indebtedness to build and equip a public school building in said school district.” But, even though that were conceded, the situation would not be improved, but aggravated, for it was not, then, the purpose of the board to “build and equip” any school building; the purpose, as we understand the testimony (which is intelligible enough), was to issue certificates, and either use them, or borrow money on them, and use the money, partly, in paying the balance of the debts due for the building and equipping of the schoolhouse that they had been occupying for a year, or more, and, partly, for purposes not disclosed, either to the taxpayer, or to the courts in the trial of this case.
As we have seen, however, the law does not contemplate, or authorize, the incurring, by the school boards, in one year, of debts to be paid from the revenue of another year; nor does the constitutional grant of authority, to levy special taxes for the additional support of the public schools and the erection of public schoolhouses, authorize such a tax for the payment of a debt already incurred, in disregard of the law which requires the budgeting of both revenues and expenditures, and the keeping of the expenditures of each year within its budgeted revenue. The declarations of the purpose of the levy in question having been misleading, and the real purpose not having been one for which a special tax could lawfully have been imposed, and not having been submitted to the taxpayers, it follows that the judge a quo was right in holding the levy to have been void; and his judgment is, accordingly,
Affirmed.